FILED
2017 Aug-22  AM 10:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| JIMMY LEE WATKINS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MORGAN COUNTY ) <br> COMMISSIONER, et al., ) <br> ) <br> Defendants. ) | Case No.  5:16-cv-00681-AKK-SGC |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The plaintiff, proceeding *pro se*, has filed an amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of the United States.  (Doc. 11).  The plaintiff names the following defendants in the amended complaint: Morgan County Commission, Morgan County Commissioner, Morgan County Sheriff Anna Franklin, Sergeant Corriko, Correctional Officers Ozbolt, Allen, McVay, and Driggers, and other unnamed correctional officers.  (*Id.* at 2).  The plaintiff seeks declaratory, injunctive, and monetary relief.  (*Id.* at 10-11).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I. STANDARD OF REVIEW

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against government officers or employees. The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or does not state a claim upon which relief can be granted. *Id.* Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id*. at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted. A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones*, 549 U.S. at 215.

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). However, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II. FACTUAL ALLEGATIONS

On October 30, 2015, the plaintiff, a state inmate, was assigned to general population at the Morgan County Jail. (Doc. 11 at 4). The plaintiff alleges the Morgan County Commission and Sheriff Anna Franklin have "a rule, regulation, custom or practice of housing [s]tate and [f]ederal inmates in the same dorm, pod, cell etc., in the Morgan County Jail Facility." (*Id.*).

3

On October 31, 2015, the plaintiff needed to shave and asked Correctional Officer Ozbolt for state issued clippers. (Doc. 11 at 4). Ozbolt told the plaintiff he would retrieve the clippers in ten to fifteen minutes. (*Id*.). Later, Officer Ozbolt brought clippers to a federal inmate. (*Id*.). The plaintiff asked Ozbolt again for state issued clippers so he could shave. (*Id*.). Officer Ozbolt failed to bring the plaintiff the clippers. (*Id*.).

The plaintiff subsequently asked a female officer in the cubicle section if he could obtain state issued clippers in order to shave. (Doc. 11 at 4). The female officer responded that officers would get the clippers "when they felt like it." (*Id*.). During lunch, an officer picked up the clippers Officer Ozbolt brought the federal inmate earlier. (Doc. 11 at 4-5). After lunch, the plaintiff again asked Officer Ozbolt for state issued clippers. (*Id*. at 5). Ozbolt responded, "'We will get to you in a minute.'" (*Id*.). Ozbolt did not bring the clippers to the plaintiff. (*Id*.).

The plaintiff "gave up waiting" on the clippers, and as he was returning to his cell upstairs, the federal inmate told the plaintiff, "I would let you use my clippers but you with this hot s - - -." (Doc. 11 at 5). The plaintiff and the federal inmate became involved in a verbal altercation. (*Id*.). The federal inmate then threatened the plaintiff. (*Id*.). As the plaintiff came back down the stairs, he told the federal inmate not to threaten him and that he did not mean the federal inmate "any type of harm." (*Id*.). The federal inmate stood up, walked over to the

plaintiff, and stated, "I will kill you." (*Id*.). The inmate then grabbed the plaintiff's head with both hands and "smashed the plaintiff's head into the brick wall behind the plaintiff." (*Id*.). The plaintiff sustained injury to his head and began bleeding. (*Id*.). The plaintiff states no officer was watching to stop the assault. (Doc. 11 at 5). The plaintiff argues that Officer Ozbolt "and others on this shift did not do their jobs as jailers." (*Id*.).

After the assault, the plaintiff began holding his head, which was bleeding, and walking back and forth in A-Pod, No. 6. (Doc. 11 at 6). The plaintiff then walked up the stairs toward his cell. (*Id*.). When the plaintiff returned to his cell, he used the emergency call button and informed the female officer in the cubicle that he had been injured and was bleeding. (*Id*.). The female officer did not respond to the plaintiff. (*Id*.). The plaintiff requested to speak with an officer, and later on, Officer Ozbolt came to the plaintiff's cell. (*Id*.). The plaintiff informed Ozbolt of the assault and asked for medical attention. (*Id*.). The plaintiff also told Ozbolt that he was experiencing severe head pain. (Doc. 11 at 6). Officer Ozbolt stated that he would return to talk with the plaintiff after he finished his walk through. (*Id*.). When Ozbolt returned, the plaintiff again asked him for medical attention. (*Id*.). Ozbolt stated that he would "get back" to the plaintiff after chow call. (*Id*.). When Ozbolt returned, the plaintiff asked him why he did not protect the plaintiff from the assault. (*Id*.). Ozbolt responded that "[h]e had other things

he was attending to and he had no time to waste on putting himself in the position to help a person like [the plaintiff]." (*Id.*). The plaintiff told Ozbolt that he was "in violation of his oath as a correction[s] officer" and requested grievance forms. (*Id.*). Ozbolt responded that there was nothing that required him to get involved in the plaintiff's personal issues. (Doc. 11 at 6). The plaintiff claims Ozbolt then "called in for the plaintiff to be put on 23 hour rack down" on the next shift. (*Id.*).

After chow, between 4:15 p.m. and 4:50 p.m., the plaintiff again pressed the emergency button in his cell and requested medical attention for his head injury and grievance forms. (Doc. 11 at 7). The plaintiff did not receive any medical treatment. (*Id.*). The plaintiff alleges he also informed Sergeant Corriko and Correctional Officers McVay and Allen that he had been assaulted and requested grievance forms and medical treatment for his head injury. (*Id.* at 9). However, the officers denied the plaintiff both grievance forms and medical treatment. (*Id.*).

After the plaintiff was placed in lockdown, he spoke with an officer on the next shift and explained what had happened to him and that he feared for his life. (Doc. 11 at 7). The plaintiff informed the officer that he needed medical attention. (*Id.*). The officer responded that he would "look into the situation." (*Id.*). The officer later notified the plaintiff that he would be moved the following morning. (*Id.*).

The next morning, November 1, 2015, several officers, including Officer Driggers, escorted the plaintiff to a disciplinary dorm. (Doc. 11 at 7). Driggers asked the plaintiff what had happened to him. (*Id.*). The plaintiff told Driggers and the unknown officers escorting him that a federal inmate had assaulted him. (*Id.*). The plaintiff asked the officers for medical attention and grievance forms. (*Id.*). Officer Driggers stated that he would investigate the matter. (*Id.*). The plaintiff did not receive any medical care. (*Id.*). The plaintiff alleges the other officers that escorted him are identifiable from the security camera. (*Id.*). The plaintiff claims that he continues to suffer from minor headaches "when exercising or if he gets too hot." (Doc. 11 at 7). The plaintiff seeks declaratory, injunctive, and monetary relief. (*Id.* at 10-11).

## III. ANALYSIS

### A. Morgan County Commission & Commissioner

The plaintiff names as defendants the Morgan County Commission and the "Morgan County Commissioner." (Doc. 11 at 2). The Commission is composed of a chairman and four additional members.[1] The plaintiff does not name the individual commissioner(s) he seeks to sue. Regardless, any claims against the Morgan County Commission and its members are due to be dismissed.

---

[1] *See* http://www.co.morgan.al.us/#.

The plaintiff alleges the Morgan County Commission and its members have "the power and authority to promulgate and establish rules and/or regulations concerning the Morgan County Jail." (Doc. 11 at 7). He argues that the Commission and its members have a custom or practice of allowing the Morgan County Jail to house state and federal inmates together "in the same pod, unit and/or cell which causes unnecessary tension, stress, animosity or conflicts/fights causing bodily harm and injury to inmates." (*Id*. at 7-8).

As an initial matter, the Morgan County Commission and its individual members are absolutely immune from monetary damages for claims arising from the appropriation of funds for the maintenance and operation of a county jail. *See Woods v. Gamel*, 132 F.3d 1417, 1420 (11th Cir. 1998) (holding Alabama county commissioners are entitled to absolute legislative immunity). Additionally, neither the county commission nor its individual members are responsible for the day-to-day operation of the jail. Under Alabama law, "an Alabama sheriff acts exclusively for the state rather than for the county in operating a county jail." *Turquitt v. Jefferson Cty., Ala.*, 137 F.3d 1285, 1288 (11th Cir. 1998). "Alabama counties have no duties with respect to the daily operation of the county jails and no authority to dictate how the jails are run." *Id*. at 1291. "Alabama counties [also] are not liable under a theory of *respondeat superior* for a sheriff's official acts that are tortious." *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 789 (1997).

Accordingly, the plaintiff's claims against the Morgan County Commission and its members are due to be dismissed for failing to state a claim upon which relief can be granted.

### B. Eighth Amendment – Failure to Protect

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officers the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (citations omitted). It is clear, however, that not every injury suffered by an inmate at the hands of another inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Farmer*, 511 U.S. at 834; *see Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)); *see Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981).[2] It is when institutional officials' deliberate indifference to a known danger or risk

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

exposes an inmate to objectively, "sufficiently serious" harm, that a constitutional violation occurs. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" is not sufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, the known risk of injury must be a "'strong likelihood, rather than a mere possibility.'" *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)).

Once it is established that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate

10

indifference requires "a state of mind more blameworthy than negligence." *Id.* at 835. Finally, the plaintiff must produce sufficient evidence that the defendants' deliberate indifference to a known danger or risk caused the plaintiff's constitutional injury. *See Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

### 1. Sheriff Anna Franklin

The plaintiff argues that Sheriff Franklin was deliberately indifferent to his safety by allowing federal and state inmates to be housed together at the Morgan County Jail. (Doc. 11 at 8). The housing of federal and state prisoners is not *per se* unconstitutional.[3] The plaintiff makes only general and conclusory claims that housing state and federal prisoners together "causes unnecessary tension, stress, animosity or conflicts/fights." (Doc. 11 at 8). The plaintiff fails to allege any facts to show Franklin was aware that a federal inmate posed a serious risk of harm to the plaintiff simply based on that inmate's status as a federal prisoner as opposed to a state prisoner. There is no discernable claim that the assault occurred due to the difference in the prisoners' respective classifications or that federal inmates are especially prone to violence. *See Mitchell v. Tillman*, No. 99-0106-CB-C, 2000 WL 207020, at * 3 (S.D. Ala. Feb. 16, 2000) (finding no evidence that the

---

[3] Some courts have found that confinement of pre-trial detainees indiscriminately with convicted prisoners may be unconstitutional under certain circumstances. *Jones v. Diamond*, 636 F.2d 1364, 1374 (5th Cir. 1981), *overruled on other grounds, Int'l Woodworkers v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986). However, the plaintiff here is a convicted prisoner, not a pre-trial detainee. (Doc. 4 at 9).

defendants knew the housing of inmates in state custody with those in federal custody would increase the chance for inmate-on-inmate assaults, and therefore, the court could not find deliberate indifference on the part of the defendants). Neither does the plaintiff allege he complained to Franklin, or another other jail official, that he was in danger of being attacked by the federal inmate. Indeed, the plaintiff does not claim he notified Franklin of a specific prior incident or threat by the federal inmate from which it could be inferred that a substantial risk of harm existed.

Based on the foregoing, the plaintiff has failed to establish that defendant Franklin had a subjective awareness of a substantial risk of serious harm to him and was deliberately indifferent to such risk. Accordingly, the plaintiff's Eighth Amendment failure to protect claim against defendant Franklin is due to be dismissed for failing to state a claim upon which relief can be granted.

2. **Ozbolt & Unknown Officers**

The plaintiff claims that Officer Ozbolt and other officers on duty failed to protect him from the assault on October 31, 2015. (Doc. 11 at 5). When the plaintiff asked Ozbolt why he did not protect the plaintiff, Ozbolt responded that he had other things he was attending to and did not have "time to waste" helping the plaintiff. (*Id*. at 6). The plaintiff claims defendant Ozbolt "and the others on this shift did not do their jobs as jailers." (*Id*. at 5). The plaintiff has alleged

sufficient facts to require a response from defendant Ozbolt concerning the Eighth Amendment failure to protect claims.

The plaintiff attempts to also name unknown officers as defendants. (Doc. 11 at 2). Specifically, the plaintiff names "all defendant[s] that are identif[i]able on the Morgan County security surveillance [camera] system(s) who are suspect(s) on the shift(s) these incidents took place [on] October 31st, 2015, and November 1st, 2015." (*Id.*).

As a general matter, fictitious-party pleading is not permitted in federal court. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). However, the Eleventh Circuit Court of Appeals has "created a limited exception to this rule when the plaintiff's description of the defendant is so specific [that the fictitious name is] 'at the very worst, surplusage.'" *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)). At this juncture, the plaintiff's failure to protect claims may proceed against these unknown officers since it is reasonable to believe that the defendants' Special Report may uncover the identities of specific officers assigned to duty stations where the assault occurred and who may have witnessed the assault. *See Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992). If the identities of these individuals are indeed uncovered, the plaintiff will be responsible for submitting an amended complaint identifying the officers by name

and alleging sufficient facts to show how each officer violated his constitutional rights.

C. **Eighth Amendment Medical Claims**

The plaintiff alleges that, after the federal inmate assaulted him on October 31, 2015, defendants Ozbolt, Corriko, McVay, and Allen denied him medical treatment for his head injury. (Doc. 11 at 6, 9). The plaintiff further alleges these defendants denied his requests for grievance forms. (*Id.*). The plaintiff also states Officer Driggers and other unknown officers were escorting him to the disciplinary dorm on November 1, 2015, when Driggers asked the plaintiff what happened to him. (*Id.* at 7). The plaintiff told Driggers and the unknown officers that a federal inmate had assaulted him; the plaintiff requested medical attention and grievance forms. (*Id.*). The plaintiff alleges Driggers responded that he would investigate the matter. (*Id.*). However, neither Driggers nor the unknown officers provided the plaintiff medical attention or grievance forms. (*Id.*). The plaintiff claims these officers denied him grievance forms "to keep their actions and deliberate indifference from being placed on record." (*Id.* at 9).

As an initial matter, the plaintiff's assertion that he was denied grievance forms fails to state a constitutional claim since an inmate has no constitutionally protected interest in an administrative grievance procedure. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) ("[A]n inmate has no

constitutionally-protected liberty interest in access to [a prison grievance] procedure."); *Moore v. McLaughlin*, 569 F. App'x 656, 659 (11th Cir. 2014) (holding that a prisoner has no constitutionally protected liberty interest in access to prison's grievance procedure and, thus, could not base a § 1983 claim on prison official's alleged failure to respond appropriately to his grievances). Therefore, the plaintiff's claims based on denial of grievance forms are due to be dismissed.

However, the plaintiff has alleged sufficient facts to warrant a response from defendants Ozbolt, Corriko, McVay, Allen, and Driggers concerning the plaintiff's Eighth Amendment claims that they denied him medical treatment for his head injury. Because the plaintiff claims the identities of the unknown officers who escorted him to the disciplinary dorm on November 1, 2015, can be uncovered from the jail surveillance, the claims against these individuals should also proceed. (Doc. 11 at 7). As stated previously, if the identities of these individuals are uncovered in the defendants' Special Report, the plaintiff must submit an amended complaint identifying these officers by name and alleging facts sufficient to state a constitutional claim against each individual defendant.

### D. Retaliation

The plaintiff claims that after the October 31, 2015 assault he complained to defendant Ozbolt that he failed to protect him and was in violation of his oath as an officer. (Doc. 11 at 6). The plaintiff then requested grievance forms. (*Id.*). The

plaintiff states defendant Ozbolt placed him on "23 hour rack down" in retaliation for his complaints. (*Id.*). The plaintiff has alleged facts sufficient to warrant a response from defendant Ozbolt concerning the plaintiff's retaliation claim.

## IV.  RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** all claims in this action be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1), except: (1) the plaintiff's Eighth Amendment failure to protect claims against defendant Ozbolt and unknown officers; (2) the plaintiff's Eighth Amendment medical claims against defendants Ozbolt, Corriko, McVay, Allen, Driggers, and unknown officers; and (3) the plaintiff's retaliation claim against defendant Ozbolt.  The undersigned **FURTHER RECOMMENDS** the remaining claims be **REFERRED** to the undersigned for further proceedings.

## V.  NOTICE OF RIGHT TO OBJECT

The plaintiff may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection.  Failure to object to factual findings will bar later review of those findings, except

for plain error. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013). Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

On receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge. The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. The plaintiff may only appeal from a final judgment entered by a district judge.

**DONE** this 22nd day of August, 2017.

_STACI G. Cornelius_
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE